## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## SAN ANGELO DIVISION

| | | |
|---|---|---|
| JOSE WILLIAM ESCOBAR PACHECO, | § | |
| Institutional ID No. 50570-056, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO.** |
| | § | **6:08-CV-073-BI** |
| CHARLES FELTS, Warden, et al., | § | **ECF** |
| | § | |
| **Defendants.** | § | |

## REPORT AND RECOMMENDATION

Plaintiff, a federal prisoner proceeding *pro se* and *in forma pauperis*, filed a complaint for damages on October 31, 2008.  This court treats the complaint as filed pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  *See Stephenson v. Reno*, 28 F.3d 26, 26 n.1 (5th Cir. 1994).  Plaintiff alleges that the Defendants, including officials and staff of the Eden Detention Center, subjected him to an excessive use of force, deliberate indifference to his medical needs, and deliberate indifference to his health and safety.

By order dated November 21, 2008, this case was transferred to the docket of United States Magistrate Judge Philip R. Lane for screening pursuant to 28 U.S.C. §§ 1915 and 1915A.  On February 26, 2009, the court held an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), and 28 U.S.C. § 1915.  Plaintiff appeared at the hearing and testified in his own behalf.  Plaintiff orally refused his consent to having the United States Magistrate Judge conduct all further proceedings in this case under 28 U.S.C. § 636(c) and asked that this case be transferred back to the docket of the United States District Judge.

Pursuant to 28 U.S.C. § 1915A, the court has conducted a review of Plaintiff's complaint as supplemented by his testimony.  The court has made findings of fact, conclusions of law, and a recommended disposition to the United States District Judge as herein provided.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In his complaint, as developed by his extensive testimony, Plaintiff alleges that:

1.      Plaintiff is currently confined to the Eden Detention Center and has been during all time periods relevant to the claims in his complaint.

2.      On November 15[1], 2007, Plaintiff and other inmates at the Eden Detention Center were on lockdown status because of a fight that occurred between inmates from different regions of Mexico.

3.      Plaintiff was in the dining hall at approximately 11:00 a.m. during the lunch meal. Plaintiff and other inmates were told by a staff member not to talk.

4.      Plaintiff protested his innocence.

5.      Plaintiff was carried outside to the hall.  Plaintiff was held on the ground and was kicked by Captain Waddell.  Plaintiff was told to be quiet and was hit and kicked by Correctional Officers Chavez; Chavez Jr.; and Villarreal Jr., who told him that he had violated the rules of emergency lockdown conditions.  Unit Manager Laxson and Case Manager Garcia were both there watching the incident and mocking Plaintiff.

6.      Plaintiff was taken to the captain's office.  There, he was told that the incident had been a big mistake and that he should not talk about it, or he could face punishment.

7.      Plaintiff went to the medical department emergency area.  Plaintiff did not submit a sick call request. Plaintiff was asked by Nurse Practitioner Kelly for a consent signed by the

---

[1]      Plaintiff indicated in his complaint that the date of the incident was November 13, 2007.  Plaintiff clarified in his testimony that the correct date of the incident is November 15, 2007.

captain, but Plaintiff did not have one.  Plaintiff was told that he would not be treated without a specific written order or directive from the captain.

8.      Plaintiff returned to his dormitory and experienced abdominal pain and backaches, and he had blood in his urine.  Plaintiff was unable to sleep because of the pain.

9.      Plaintiff was seen in the medical department on November 16, 2007, for complaints of rib pain, and he underwent x-rays.

10.      The unit was on lockdown.  When the lockdown was over, Plaintiff requested medical treatment.  After he was told that he needed permission from the captain, Plaintiff looked for the captain but was not able to find him.  Plaintiff submitted a sick call request two or three days later.

11.      Plaintiff was seen in the medical department on November 21, 2007, complaining of bruising to the outer calf.  Medication was not prescribed at that time.

12.      An investigation into the fight between the different groups of Mexican inmates and the resulting institutional response was carried out by the Department of Justice.

Plaintiff is seeking declaratory and injunctive relief and an award of compensatory and punitive damages.

## II.   ANALYSIS

In both proceedings *in forma pauperis* and civil actions brought by a prisoner against a governmental entity, officer, or employee, the court is required under 28 U.S.C. §§ 1915-1915A to dismiss the complaint or any portion of the complaint if the complaint is frivolous or malicious or fails to state a claim on which relief may be granted.  These provisions thus apply to this prisoner civil rights action.  *Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999).  A "complaint may be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) if it has no arguable basis in law or in fact." *Ruiz v. United States*, 160 F.3d 273, 274-75 (5th Cir. 1998).  "As part of the screening

process of prisoner complaints under § 1915A, a trial court is directed to 'dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . .'" *Id.* at 274 (quoting § 1915A).  A claim has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  The court is authorized *sua sponte* to test whether the proceeding is frivolous or malicious even before the service of process or before an answer is required to be filed. *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990); *see also* 42 U.S.C. § 1997e(c)(1).  A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these provisions. *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976) (use of questionnaire to develop the factual basis of the plaintiff's complaint); *Spears,* 766 F.2d 179 (use of an evidentiary hearing).

The court has reviewed Plaintiff's arguments and claims in his complaint and his testimony at the *Spears* hearing to determine whether Plaintiff's claims present grounds for dismissal or present cognizable claims which require the Defendants to answer and the case to proceed.

## A.     Excessive Force Claim

Plaintiff alleges that Defendants Charles Felts, Chief of Security Gonzalez, Waddell, Chavez, Chavez Jr., and Villarreal Jr. subjected him to cruel and unusual punishment in the form of excessive use of force.  Plaintiff alleges that Waddell, Chavez, Chavez Jr., and Villarreal Jr. kicked and hit him while Plaintiff was being held on the ground on November 15, 2007.

In order to state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).

Plaintiff alleges that he was held down on the floor, was kicked by several officers, and sustained injuries, including severe abdominal pain, backaches, and blood in his urine. He testified that he has experienced problems with his foot and back and has problems with standing or walking for long periods of time.

To succeed on an excessive force claim, a plaintiff bears the burden of showing (1) an injury (2) which resulted directly and only from the use of force that was excessive to the need, and (3) the force used was objectively unreasonable. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (internal quotation marks omitted). The determination of excessive force includes consideration of the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Baldwin v. Stalder*, 137 F.3d 836, 838 (5th Cir. 1998) (citing *Hudson v. McMillian*, 503 U.S. 1, 7(1992)). The absence of serious injury, while relevant to the inquiry, does not preclude relief. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997. However, the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Id.*

Assuming at this stage the truth of the facts alleged in Plaintiff's complaint and his testimony under oath, and having considered the authenticated records, the court finds that Plaintiff has stated a claim of a constitutional violation sufficient to require an answer or other responsive pleading by Defendants Chavez, Chavez Jr., and Villarreal Jr. on Plaintiff's claim that he was

subjected to an excessive use of force arising from the November 15, 2007, incident. The court, therefore, recommends that the United States District Judge enter an order requiring Defendants Chavez, Chavez Jr., and Villarreal Jr. to answer or otherwise plead to Plaintiff's excessive force claim against these Defendants in their individual capacities.

In order to state a cause of action under section 1983, the plaintiff must identify defendants who were either personally involved in a constitutional violation or whose acts were causally connected to the constitutional violation alleged. *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). Personal involvement is an essential element of a civil rights cause of action. *Thompson v. Steele*, 709 F. 2d 381, 382 (5th Cir. 1983). Prison officials "cannot be automatically held liable for the errors of their subordinates." *Adames v. Perez*, 331 F.3d 508, 513 (5th Cir. 2003). Supervisory officials may be held liable only if: "(i) they affirmatively participate in the acts that cause constitutional deprivations; or (ii) [they] implement unconstitutional policies that causally result in plaintiff's injury." *Mouille v. City of Live Oak, Tex.,* 977 F. 2d 924, 929 (5th Cir. 1992). Vicarious liability does not apply to § 1983 claims. *Pierce v. Tex. Dep't of Crim. Justice, Institutional Div.,* 37 F. 2d 1146, 1150 (5th Cir. 1994).

Plaintiff's allegations, accepted as true, fail to demonstrate any personal involvement by Felts or Gonzalez in the alleged excessive use of force upon him, nor do they demonstrate an unconstitutional policy which caused Plaintiff's injury. Therefore, the court recommends that Plaintiff's claims against Felts and Gonzalez in their individual and supervisory capacities and arising out of the use-of-force incident on November 15, 2007, be **DISMISSED WITH PREJUDICE**.

## B.    Deliberate Indifference to Health and Safety

Plaintiff alleges that Defendants Michael Mukasey, Harvey Lappin, Felts, Laxson, Garcia, Gonzalez, Kelly, and Wagner were deliberately indifference to his health and safety and serious

medical needs and thus subjected him to cruel and unusual punishment by failing to protect him from the use-of-force incident.

It is recognized that "prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). The protections afforded prisoners specifically include the Eighth Amendment's prohibition against cruel and unusual punishment. *See Whitley v. Albers*, 475 U.S. 312, 318, (1986). Punishment rises to the level of cruel and unusual only where it involves an "'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

"The Constitution 'does not mandate comfortable prisons,' . . . but neither does it permit inhumane ones, and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Wilson v. Lynaugh*, 878 F.23846, 849 (5th Cir. 1989) (internal citation omitted). The Eighth Amendment's prohibition against cruel and unusual punishment imposes minimum requirements on prison officials in the treatment received by and facilities available to prisoners. *Woods*, 51 F.3d at 581. However, the Eighth Amendment does not afford protection against mere discomfort or inconvenience. *Id.*

The Supreme Court has defined the requirements for making an Eighth Amendment claim as containing both objective and subjective components. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The objective component requires proof that the deprivation was sufficiently serious. *Id.* To meet the objective component, "extreme deprivations are required . . . ." *Davis v. Cox,* 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hudson,* 503 U.S. at 8). Under a "totality of conditions test," conditions of confinement must not impose the wanton and unnecessary infliction of pain. *Austin v. Johnson,* 328 F.3d 204, 209 (5th Cir. 2003).

The  subjective component is met by a prison official who is deliberately indifferent to an inmate's health or safety.  In this context, to be deliberately indifferent, "the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Adames*, 331 F.3d at 512.  In other words, the prison official must be subjectively aware of a substantial risk of serious harm to the inmate and fail to protect the inmate from that harm.  *Farmer*, 511 U.S. at 839-40.  Thus, the "'failure to alleviate a significant risk that [the official] should have perceived, but did not,' is insufficient to show deliberate indifference." *Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer,* 511 U.S. at 838).

"To violate the Cruel and Unusual Punishment Clause, a prison official must have a 'sufficiently culpable state of mind.'" *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) (quoting *Farmer*, 511 U.S. at 834).  The "applicable *mens rea* of deliberate indifference demands subjective knowledge of a substantial health risk."  *Gobert v. Caldwell*, 463 F.3d 339, 348 (5th Cir. 2006).  Thus, "[t]he deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the [ ] officials were actually aware of the risk, yet consciously disregarded it." *Lawson v. Dallas County,* 286 F.3d 257, 262 (5th Cir. 2002).  A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it." *Gobert*, 463 F.3d at 346 (citing *Farmer*, 511 U.S. at 847); *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994)).  Prison officials must "know of and disregard [the] excessive risk to inmate health or safety."  *Hall*, 190 F.3d at 697 (citations and brackets omitted).  "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants."  *Id.* (quoting *Farmer*, 511 U.S. at 834).

Thus, to prevail on a section 1983 failure to protect claim, a prisoner must demonstrate that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison

officials were deliberately indifferent to his need for protection.'" *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (quoting *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)).

The deliberate indifference requirement is more than mere negligence. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). Mere negligence or neglect does not constitute deliberate indifference. *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

Plaintiff testified that Laxson and Garcia were both present during the incident, made fun of Plaintiff, and refused to give him a grievance form. Plaintiff alleges that Felts is ultimately responsible for the training and supervision of all Eden Detention Center employees and staff; that Gonzalez is responsible for all security operations at the unit; that Lappin is the Director of the Federal Bureau of Prisons; and that Mukasey, as the United States Attorney General, is responsible for the operations and supervision of the Bureau of Prisons. Plaintiff's allegations fail to demonstrate any personal involvement by Laxson, Garcia, Felts, Gonzalez, Lappin, or Mukasey in the alleged constitutional deprivations, nor do they demonstrate an unconstitutional policy that resulted in Plaintiff's injuries. Indeed, Plaintiff's allegations also fail to demonstrate that there was a substantial risk of serious harm which these Defendants wantonly ignored. The court thus recommends that Plaintiff's claims for deliberate indifference to his health and safety, asserted against Defendants Laxson, Garcia, Gonzalez, Felts, Lappin, and Mukasey in their individual and supervisory capacities, be **DISMISSED WITH PREJUDICE**.

C.     **Deliberate Indifference to Serious Medical Needs Claim**

Plaintiff alleges that he was subjected to deliberate indifference to his serious medical needs by Defendants Wagner and Kelly. Plaintiff alleges that he reported to the emergency section of the medical department without a signed consent from the captain to seek treatment and was told by Kelly that he would not receive treatment without such consent. Plaintiff testified that the unit was under lockdown status, that he tried to find the captain but was unsuccessful, and that he later

submitted a sick call request form.  Plaintiff also testified that he was seen in the medical department on November 16, 2007, when he underwent x-rays, and on November 21, 2007.  Plaintiff testified that he was not provided medication and that he sustained no injury related to any delay in medical treatment.

In the context of medical care, or lack of care, the Eighth Amendment prohibits the unnecessary and wanton infliction of pain or care repugnant to the conscience of mankind.  *Estelle*, 429 U.S. at 104-06.  Not every claim of inadequate or improper medical treatment is a violation of the Constitution, however.  *Id.* at 105-07.  To establish an Eighth Amendment medical claim for cruel and unusual punishment, Plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Id.* at 106.  A complainant must show that a prison official's state of mind was "one of 'deliberate indifference' to inmate health or safety."  *Farmer,* 511 U.S. at 834.  "The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the jail officials were actually aware of the risk, yet consciously disregarded it."  *Lawson,* 286 F.3d at 262. Thus, the prison official must "know of and disregard [the] excessive risk to inmate health or safety."  *Hall*, 190 F.3d at 697 (citations and brackets omitted).  Moreover, "the facts underlying a claim of 'deliberate indifference' must *clearly evince* the medical need in question and the alleged official dereliction."  *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (citing *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981)).  "To violate the Cruel and Unusual Punishment Clause, a prison official must have a 'sufficiently culpable state of mind.'"  *Hall*, 190 F.3d at 697 (quoting *Farmer*, 511 U.S. at 834). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants."  *Id.*

The deliberate indifference requirement is more than mere negligence in failing to supply medical treatment. *Gibbs*, 254 F.3d at 549. A complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment

under the Eighth Amendment." *Hall*, 190 F.3d at 697 (citing *Estelle*, 429 U.S. at 105).  Neither

"'negligence, neglect or medical malpractice'" gives rise to a § 1983 cause of action. *Varnado v.*

*Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991) (citing *Johnson,* 759 F.2d at 1238). "[N]egligent or

mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not

provide the basis for a civil rights action." *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993).  A

negligent or "inadvertent failure to provide adequate medical care cannot be said to constitute 'an

unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'"

*Estelle,* 429 U.S. at 105-06.  While inadequate treatment "may, at a certain point, rise to the level

of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy,* 174 F.3d

530, 534 (5th Cir. 1999).  Thus, mere "negligence is insufficient to support a finding of liability";

the Plaintiff must show that the Defendants were "deliberately indifferent." *Adames*, 331 F.3d at

514.

Deliberate indifference is also more than disagreement between patient and doctor as to the

appropriate treatment, except in exceptional circumstances. *Banuelos v. McFarland*, 41 F.3d 232,

235 (5th Cir. 1995) ([A]bsent exceptional circumstances, a prisoner's disagreement with his medical

treatment is not actionable under § 1983.). Moreover, "[u]nsuccessful medical treatment does not

give rise to a § 1983 cause of action." *Varnado*, 920 F.2d at 321 (citing *Johnson*, 759 F.2d at 1238);

*Fielder*, 590 F.2d at 107.

Rather, to show deliberate indifference to his serious medical needs, the Plaintiff must

demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated

him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for

any serious medical needs." *Domino*, 239 F.3d at 756 (quoting *Johnson*, 759 F.2d at 1238).

Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's

allegations of deliberate indifference.  *Banuelos*, 41 F.3d at 235 (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir.1993)).

Here, Plaintiff alleges that Kelly refused to see him without the signed consent of the captain. He testified that he was seen in the medical department on November 16, 2007, underwent x-rays, and was seen again on November 21, 2007.  Plaintiff's allegations demonstrate that although he did not immediately receive treatment when requested, his complaints were not ignored, nor did medical officials evince a wanton disregard for his serious medical need.

Delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm.  *Mendoza*, 989 F.2d at 195.  Plaintiff must also show that the Defendants had a sufficiently culpable state of mind.  *Id.*  Insofar as Plaintiff may claim delay in his medical treatment, his claims fail to demonstrate deliberate indifference by any of the Defendants, and his claims fail to demonstrate any substantial harm occasioned by delay. Moreover, Plaintiff's allegations fail to demonstrate any personal involvement by Wagner in the alleged constitutional deprivation.

The court has considered Plaintiff's allegations and his testimony under oath and finds that Plaintiff has failed to state a constitutional claim for deliberate indifference to his serious medical needs. The court, therefore, recommends that the claims against Wagner and Kelly for deliberate indifference to Plaintiff's serious medical needs, in their individual or supervisory capacities, be **DISMISSED WITH PREDJUCE**.

D.     **Official Capacity Claims**

Plaintiff has indicated that he is suing each of the Defendants in his or her individual and official capacities.  The court has already addressed the claims against each of the Defendants in their individual capacities above.

Suits against federal officials under *Bivens* may only be asserted in his or her individual capacity. *Bivens*, 510 U.S. at 485. Plaintiff's claims against the Defendants in their official capacities are barred by the doctrine of sovereign immunity. *See Correctional Services Corp. v. Malesko*, 534 U.S. 61, 71-72, 151 L. Ed. 2d 456, 122 S. Ct. 515 (2001). "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations," not to deter a federal agency or the United States. *Malesko,* 534 U.S. at 70. Therefore, Plaintiff's *Bivens* claim against the Defendants their official capacities for an award of money damages lacks an arguable basis in law or fact and should be **DISMISSED WITH PREJUDICE**.

**E.      Plaintiff's Motion Requesting Appointment of Counsel and a Restraining Order**

Plaintiff filed a motion requesting appointment of counsel and a restraining order on February 18, 2009 (Doc. 8). Plaintiff asks that he be appointed counsel because he is a non-English speaking inmate who has had trouble obtaining discovery. Plaintiff also asks for a restraining order, ordering the Defendants to stop retaliating against him.

"A civil rights complainant has no right to the automatic appointment of counsel," and appointment of counsel is warranted only in exceptional circumstances. *Akasike v. Fitzpatrick*, 26 F.3d 510, 512 (5th Cir. 1994). Although 28 U.S.C. § 1915(e)(1) provides that a court may request an attorney to represent any person claiming an *in forma pauperis* status, the courts are not empowered to make compulsory appointments in civil actions. *Mallard v. U.S. Dist. Court for the Southern Dist. of Iowa*, 490 U.S. 296, 301-302 (1989).

In determining whether to appoint counsel in a § 1983 case, the court may base its decision on several factors, including:

1.      The type and complexity of the case;

2.      The petitioner's ability to present and investigate his case;

-13-

3.      The presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and in cross-examination; and

4.      The likelihood that the appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination."

*Parker v. Carpenter*, 978 F.2d 190, 193 (5th Cir. 1992) (citing *Murphy v. Kellar*, 950 F.2d 290, 293 n.14 (5th Cir. 1992) (quoting *Cooper v. Sheriff, Lubbock County, Texas,* 929 F.2d 1078, 1084 (5th Cir. 1991)).

The court notes that Plaintiff has not shown any inability to set forth his claims for relief nor has he shown that extraordinary circumstances are involved which would justify the appointment of counsel.   Plaintiff has most ably represented himself and his claims thus far.

For the reasons set forth, the court finds that Plaintiff's motion for appointment of counsel is not well-taken and should be **DENIED** without prejudice to Plaintiff's right to request appointment of counsel should circumstances change.

In order to secure a temporary restraining order or preliminary injunction, the moving party must demonstrate:  (1) a substantial likelihood of success on the merits; (2) a substantial threat that movant will suffer irreparable injury if the restraining order is not issued; (3) that the threatened injury to the movant outweighs any damage the restraining order might cause to the opponent; and (4) that the restraining order will not be adverse to the public interest.  *See Southerland v. Thigpen,* 784 F.2d 713, 715 (5th Cir. 1986).  The party seeking a restraining order or injunction must prove all four elements, and failure to prove any one of them will result in denial of the motion.  *See Enterprise Intern, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).  "An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable injury."  *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976).

The court has reviewed the facts alleged in Plaintiff's motion, his complaint, and his testimony at the *Spears* hearing.  The court finds that these allegations fail to demonstrate a substantial likelihood of success on the merits or a substantial threat that the movant will suffer irreparable injury if the restraining order is not issued.  Therefore, the court recommends that Plaintiff's motion requesting a restraining order be **DENIED,**

### III.   CONCLUSION, RECOMMENDATION, AND TRANSFER

The court has considered Plaintiff's allegations in his complaint, his testimony, and the law and recommends that the United States District Judge take the following actions:

1.     **DISMISS WITH PREJUDICE** Plaintiff's claims that he was subjected to cruel and unusual punishment in the form of deliberate indifference to his health and safety and deliberate indifference to his serious medical needs against the Defendants in their individual or supervisory capacities;

2.     **DISMISS WITH PREJUDICE** Plaintiff's claims of cruel and unusual punishment in the form of an excessive use of force against Defendants Felts and Gonzalez;

3.     **DISMISS WITH PREJUDICE** any claims against any of the Defendants in his or her official capacity;

4.     **DISMISS** Defendants Felts, Garcia, Gonzalez, Lappin, Laxson, Wagner, Kelly, and Mukasey from this case;

5.     **ENTER AN ORDER** directing Defendants Chavez, Chavez Jr., and Villarreal Jr. to answer or otherwise plead to Plaintiff's claims that these Defendants subjected him to an excessive use of force on November 15, 2007; and

6.     **DENY** Plaintiff's motion for a restraining order filed February 18, 2009 (Doc. 8).

**IT IS FURTHER ORDERED THAT:**

1.      Plaintiff's motion requesting appointment of counsel filed February 18, 2009 (Doc. 8), is **DENIED**; and

2.      Any pending non-dispositive motions not otherwise addressed above are **DENIED**.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

A copy of this order shall be sent by first class mail to all parties appearing *pro se* and  to any attorney of record by first class mail or electronic notification.

**IT IS ORDERED** that the transfer of this case to the United States Magistrate Judge is terminated, and the case is hereby transferred to the docket of United States District Judge Sam R. Cummings.

DATED this 23rd day of April, 2009.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**